## WATSON *v.* ALBANY AND NORTHERN RAILWAY CO.

The issuance by the secretary of State of a certificate of incorporation to those who had purchased at judicial sale the property and franchises of a railway company does not, ipso facto, create a corporation authorized to operate the railroad and exercise the franchises of that company. Such a corporation does not come into complete existence until after organization under the certificate in the manner prescribed by law.

**Argued May 19.—Decided June 5, 1900.**

Action for damages. Before Judge Littlejohn. Dooly superior court. September term, 1899.

*Walters & Wallace* and *J. T. Hill*, for plaintiff.
*W. F. Clarke* and *D. L. Henderson*, for defendant.

LUMPKIN, P. J. On the trial of this case, which was an action by Watson against the Albany and Northern Railway Company, the court directed a verdict for the defendant, and the plaintiff excepted. In his petition he alleged that, on or about the 18th day of October, 1895, he was in the employment of the defendant company in the capacity of a train-hand, and sustained serious personal injuries attributable to the negligence of the defendant's engineer. As a witness in his own behalf he testified that he was injured on the day above mentioned. The ground upon which the verdict was directed against him

was, that, on that date, there was no such corporation as the Albany and Northern Railway Company, and that consequently the plaintiff failed to prove the essential allegation that he was at the time in question an employee of this company. The evidence in this connection was, in brief, as follows: At a judicial sale of the property and franchises of the Albany, Florida and Northern Railway Company, which occurred on the 17th day of May, 1895, Frank L. Hamilton, Luther L. Bent, and Henry P. Talmadge became the purchasers. Subsequently they presented to the secretary of State a petition for incorporation under the name of the Albany and Northern Railway Company, and a certificate of incorporation was issued to them on the 12th day of September, 1895. They did not formally organize under this certificate until November 1, 1895, on which day they met, adopted a common seal, issued stock, made by-laws, and elected a board of directors. The case therefore turns upon the question whether the Albany and Northern Railway Company immediately upon the issuing of the certificate by the secretary of State became a corporation duly authorized to carry on the business of running a railroad and subject to the liabilities incident thereto, or only became such on the date of the formal organization of the company. We think this question is settled by the provisions of paragraph 12 of section 2167 of the Civil Code, which was codified from the general act for the incorporation of railroad companies, approved December 17, 1892. See Acts of 1892, pp. 44–45. That paragraph declares that the purchasers at judicial sale of the property and franchises of a railroad company, "their associates or assigns, may organize anew by filing a petition with the secretary of State, requesting to be substituted for the original petitioners and stockholders, with all their powers, rights, privileges, duties and liabilities, . . when said new incorporators may proceed anew by electing new directors as provided by" the act above mentioned, "and may distribute and dispose of stock, and may conduct their business generally as provided by" said act; and such "purchasers and their associates shall thereupon be a corporation, with all the powers, privileges, and franchises conferred by, and be subject to the provisions of," said act. It will thus be seen that the purchasers of a railroad were, under the pro-

visions of this act, given the right to "organize anew" by filing the prescribed petition with the secretary of State; and upon so doing, the "new incorporators" were further authorized to "proceed anew" by electing directors, distributing and disposing of stock, and conducting generally the business of the newly-formed corporation. The phrase declaring that the "purchasers and their associates shall *thereupon* be a corporation" means, we think, that they shall be a corporation duly authorized to exercise the franchises of a railway company only after having proceeded to elect directors, etc., as in the act expressly provided.

Under the provisions of section 2168 of the Civil Code, which were taken from the act of 1894 (Acts of 1894, p. 65), the mere filing of a petition by such purchasers is not sufficient. On the contrary, they are not now authorized to proceed with the organization of a company until after receiving a certificate of incorporation from the secretary of State. They may then proceed to elect directors and issue stock, but not until these things have been done is it contemplated that the newly-formed corporation shall assume control and management of the property. It is to be observed that, under paragraph 11 of section 2167 of the Civil Code, the party or parties acquiring by purchase the title to the property and franchise of a railway company, sold under judicial process, may, if they choose, operate the railroad without obtaining a new charter. If they do this, they are, of course, responsible to the public and to their employees for the manner in which their business is conducted. In case they elect to form a railway corporation, this same responsibility will rest upon them until they shall have proceeded so far in the organization of such corporation as to have duly appointed officials authorized, in behalf of the corporation, to accept from the purchasers a surrender of the property and franchises of the old company. Until this point is reached, the liability of the purchasers must necessarily continue, and not until it is reached can the liability of the new company begin. Where, as the law contemplates may be done, and as is usually the case, the purchasers, in forming the new corporation, associate with themselves other persons, who will not be interested in the affairs of the railroad until the company is duly organized, and who before that time can have no voice in the man-

agement of the business, it would be manifestly unjust to hold them responsible for the consequences of the negligence or mismanagement of the original purchasers before complete organization took place and possession and control of the railroad could be surrendered to the corporation. It certainly can not be seriously contended that the General Assembly ever contemplated such a result.

Applying what is above said to the facts of the case in hand, it follows that on the 18th of October, 1895, the Albany and Northern Railway Company was not in existence as a duly organized corporation. It did not actually become such until the 1st of November of that year. It therefore neither had, nor could have, prior to that date, a servant or employee; and consequently the plaintiff's allegations that he was, on October 18th, injured while in the employment of this company, and that his injuries were caused by the negligence of an engineer in its service, were not established. This being so, there was no error in directing a verdict in favor of the defendant, for the plaintiff did not, as it was incumbent upon him to do, prove his case as laid. He was at that time, under the facts in evidence, the employee of the purchasers of the property and franchises of the old Albany, Florida and Northern Railroad Company, and this fact precluded the possibility of a lawful recovery against the defendant corporation. See, in this connection, *R. & D. R. Co.* v. *Buice*, 88 *Ga.* 180, and *Ga. R. & B. Co.* v. *Strauss*, 110 *Ga.*

*Judgment affirmed. All concurring, except Fish, J., absent.*